E. C. POST AND J. R. HUNTER, PARTNERS AS POST & HUNTER, AND H. L. GREEN, AS ASSIGNEE OF POST, APPELLANTS, VS. GEORGE F. ROACH AND SAMUEL H. MAYO, PARTNERS AS GEORGE F. ROACH & CO., APPELLEES.

1. Where a creditor's bill does not seek to set aside his debtor's assignment for the benefit of creditors, and no fraud in making the assignment is shown, it is error to decree that the property assigned shall be held subject to a judgment and execution on the creditor's claim obtained after the commencement of the creditor's suit.

2. A creditor must have prosecuted his claim to judgment to constitute a lien on real property, and to judgment and execution to constitute a lien on personal property, before he can, in a court of equity, question the disposition of the debtor's property, even though disposed of by fraudulent assignment; and the pending of an action at law between the parties which may result in a judgment and execution for the creditor, does not modify this doctrine.

Appeal from the Circuit Court for Putnam County.

The facts of the case are stated in the opinion.

*Calhoun, Davis & Gillis,* for Appellants.

No counsel appearing for Appellees.

MITCHELL, J.: This is a suit of Roach & Co. against E. C. Post and J. R. Hunter, as partners under the style of

Post & Hunter, and H. L. Green, as assignee of Post. The bill alleges that on March 19, 1885, Post wrote complainants a letter asking credit for a bill of furniture, and promised complainants if they would ship him the goods he would send them a joint note of himself and wife so soon as he could know the amount, and would send check to pay freight; that in this communication he made statements and representations as to the amount of property he owned, and that his letter is signed " E. C. Post, of Post & Hunter;" that complainants relying upon the statements made in this letter, did on June 20, 1885, ship to defendants (Post & Hunter) a bill of goods amounting to near $1,000, and that they advanced freight charges and insurance premiums; that after they had shipped the goods and defendants, Post & Hunter, had received them and knew the amount, they would not and have not delivered to complainants said joint note of Post and wife to secure the same; that afterwards Post made an assignment to Green, nominally for the benefit of his (Post's) creditors; that Post repudiated the existence of any such firm as Post & Hunter; that complainants were informed and believe that no such firm ever did in fact exist, but its existence was only pretended to deceive; that complainants are informed and believe that several thousand dollars worth of property had been purchased from other parties under the same pretext; that Post, after having used Hunter as a " cat's-paw," assigned the goods bought by Post & Hunter for the benefit of Post's creditors; that in December, 1885, complainants commenced their action against defendants for the amount due them, and simultaneously sued out a writ of garnishment against Green as assignee of Post, and defendants and garnishee appeared in said suit; that soon afterwards Green, as assignee, gave notice that he would sell the goods at auction;

that complainants have good reason to believe that Green, the assignee, in his answer as garnishee will deny that he has any goods or effects of Post & Hunter, and that he would convert the stock into ready money before the day for answer and there would be nothing left for the judgment to reach; and that the funds of Post & Hunter would go to pay the debts of Post, and he would claim a homestead and exemption.

The bill then charges confederation between Post, Hunter and Green to cheat complainants out of their moneys. It further alleges that the defendants pretend that no such firm as Post & Hunter ever existed, but that it was understood between them that if the said Hunter could raise so much money he was to be a partner, but that he never raised the money, and was therefore never a partner, and that there was never any articles of copartnership entered into between them, that the said defendant Hunter never received any of the income of said firm, that Post kept the business himself and had all the stock in charge, and having assigned, conveyed the right and property to the assignee, Green; that the said assignee wished to hurry the sale of the assets for the benefit of Post's creditors, and that the building in which the business was conducted belonged to the wife of Post, and the said Post had no real estate to pass to the assignee, all of which pretences are contrary to equity and good conscience. The bill concludes with prayer for an injunction restraining and enjoining defendants from selling or disposing of the goods, or in any wise meddling with the furniture, for the appointment of a master to take the property assigned in custody and for an account before the master, and that the master shall sell the property, pay complainants, and then pay all other claims that shall be proven against Post & Hunter.

An injunction was granted on the bill, an answer afterwards put in, on which issue was joined, and on the testimony taken a hearing had, and a final decree given, in which it is recited that it appearing to the Court that the property mentioned in the bill as having been assigned to Green was at the time the property of Post and Hunter, and that at the time of the purchase of the goods said Post and Hunter were partners, and that as such partners they purchased the goods, and that a judgment has been obtained by complainants against Post and Hunter, upon which execution has been issued, and that the goods assigned are subject to said judgment and execution, and should be applied to the satisfaction of the same, and also that the real estate belonging to Post & Hunter at the time of said assignment is subject to said judgment and execution; therefore it is decreed that the property, real and personal, included in the assignment, be and the same is declared and decreed to be subject to the execution aforesaid. This is substantially the whole of the decree.

We do not deem it necessary to set out the details of the answer, which for the most part admits the allegations of the bill, with explanations of default on the part of Post, not, in our view, material in a legal sense. But the answer denies fraud. Nor is it necessary to recite the evidence, further than by incidental references to the same in the succeeding epitome of facts, with a view to sustain our conclusion that the bill itself is fatally defective in making a case for the relief sought. We gather from the record that the case is this: Roach & Co. sold goods to Post, representing himself as buying for Post & Hunter. Post offered to give certain security, which he failed to do. Though there was no real partnership between Post & Hunter, as between themselves, the fact that Hunter knew of the order-

ing of the goods in the firm name, and gave no dissent, bonnd him as a partner so far as Roach & Co. were concerned; but Roach & Co. were informed by letter from Post, June 29, 1885, before the goods were received, and several months before this suit was instituted, that Hunter had withdrawn from the partnership, the fact being that the arrangement between Post & Hunter was that the latter should become a partner on contributing a certain sum of money to the business, which he did not do, and that he did not share in the profits of the business. Post having conducted the business in his own name from June 26, 1885, found himself in failing circumstances on November 7th, 1885, and on that day made an assignment to Green for the benefit of his creditors. After the assignment and before the bill in this case was filed, Roach & Co. had commenced an action against Post & Hunter for the price of the goods, and that action was still pending, but before the present suit was determined, there was a judgment in favor of Roach & Co. for the amount claimed, and an execution issued which was returned " nothing to be found."

Conceding that Roach & Co. were deceived in the promises made by Post as to the security he would give them, they only stood in the relation of ordinary creditors, whether of Post or of Post & Hunter. If fraud was practiced upon them in obtaining the credits, that might have been a ground for following up the goods they sold, and reclaiming them, but this is not what they undertake, and even if it were, the length of time they suffered to elapse before any complaint of fraud, knowing of Post's default, and that he was claiming to do the business in his individual name, was an indication that the fraud charged was an afterthought. Then, if Roach & Co. were only general creditors, awaiting the payment of their claim, like other

creditors, was the assignment in fraud of their rights, such as entitled them to have it set aside? They do not, indeed, ask to have it set aside, and that is a serious defect in their bill.    But if this had been their aim, there is nothing in the bill, nor anything in the evidence, to show fraud.    On its face the assignment is that of an ordinary debtor, giving preference to some creditors over others.    It was made by one who was known to Roach & Co. for several months previous to be in charge of the business, and to have possession and control of the goods in his own name, and there is not a single circumstance shown to indicate that the assignment he made was not in good faith.    As to Roach & Co., so far as appears, the only complaint they can make against the assignment is that they were not among the preferred creditors.    They had no lien on the goods, and were not in a position to complain that Post's assignment, after undisputed exclusive possession and control of the business for months, was not an assignment by Post & Hunter.    Of course, no one questions the right of a debtor to make an assignment, preferring some creditors over others, so long as there is nothing fraudulent in the transaction.

But even if there had been fraud in the assignment, Roach & Co. on the showing they make, could not invoke equity to enforce their claim.    The law is that a creditor must have prosecuted his claim at law to judgment to constitute a lien on real property, and to judgment and execution to constitute a lien on personal property before he can question the disposition of the debtor's property.    Wiggins vs. Armstrong, 2 Johns. Ch., 144; Rhodes vs. Cousins, 6 Randolph, 188; 2 High on Injunctions, Section 1403.    And it does not avail to modify this doctrine, that an action at law is pending which may result in a judgment and execu-

tion in favor of the creditor. Phelps vs. Foster, 18 Ill, 309. The decree will be reversed and the bill dismissed.